UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT J. BRIGGS,

        Plaintiff,

vs.                                    Case No. 3:13-cv-212-J-39MCR

ROBERT D. HANCOCK, et al.,

        Defendants.

_____

## ORDER

### I.  Status

On February 21, 2013 (pursuant to the mailbox rule), Plaintiff Robert J. Briggs instituted this action by filing a civil rights Complaint (Complaint) (Doc. 1) pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding on a Second Amended Complaint (Second Amended Complaint) (Doc. 25).[1] This cause is before the Court on Defendant Cathy Griffin's Motion to Dismiss (Griffin's Motion to Dismiss) (Doc. 28) and Defendants' [Robert Hancock, G. A. Espinosa,[2] and Joseph E. Allen] Motion to Dismiss (Defendants' Motion to Dismiss) (Doc. 38).   Plaintiff has responded.   See Plaintiff's Reply to Defendant Answer/and Objection to Defendant's Motion to Dismiss (Response) (Doc. 30) and Plaintiff's Reply to State's Motion to Dismiss for Hancock, Allen and Espinosa (Response to Defendants) (Doc. 40).

_____

[1] Plaintiff is proceeding pro se.

[2] The Clerk shall correct the name on the docket from G. A. Espino, M.D., to G. A. Espinosa, M.D.

Defendants assert that Plaintiff has not exhausted his administrative remedies and he has failed to state a claim upon which relief can be granted. The parties provided documents concerning the exhaustion of administrative remedies.

## II.  The Second Amended Complaint

In the Second Amended Complaint, Plaintiff names several Defendants: Robert D. Hancock, a correctional officer of the Florida Department of Corrections (FDOC); Joseph F. Allen, a correctional officer of the FDOC; Cathy Griffin, a nurse of the FDOC; Doctor G. A. Espinosa, a doctor of the FDOC; a John Doe Defendant; and a Jane Doe Defendant.  The remaining Defendants have been dismissed from this action.  All Defendants are named in their individual capacities.  See Response at 15, Response to Defendants at 7.

There are four counts raised: (1) Count One – an Eighth Amendment claim of excessive use of force against Defendant Hancock;[3] (2) Count Two – an Eighth Amendment claim of excessive use of force/failure to protect against Defendant Allen for directing officers to beat Plaintiff; (3) Count Three – an Eighth Amendment claim against Defendants Griffin, Espinosa, Jane Doe, and John Doe, for refusing to treat Plaintiff's serious medical needs

---

[3] In Count One, Plaintiff also raises a state tort claim of assault and battery against Defendant Hancock.

and delaying medical treatment;[4] and (4) Count Four - a conspiracy claim against Defendants Hancock, Allen, John Doe, Cathy Griffin, and Jane Doe.[5]

In the Second Amended Complaint, Plaintiff alleges the following. He is an inmate formerly confined at Union Correctional Institution (UCI). On February 23, 2009, at UCI, Defendant Hancock and officer Charles Combs conducted a cell search of Plaintiff's housing unit M-103 (a medical dormitory for disabled persons). Second Amended Complaint at 6. An unidentified individual sent a letter to Defendant Allen stating that Plaintiff had a weapon. Id. Defendant Hancock escorted Plaintiff to the sally port, where Defendant Allen was waiting for them. Id. at 12. Defendant Hancock showed Defendant Allen an object, which Hancock described as a homemade weapon found under Plaintiff's locker. Id. Defendant Allen inquired about the weapon. Id. Plaintiff denied any knowledge of the weapon and stated it was not his weapon. Id.

---

[4] Plaintiff mentions the Due Process Clause of the Fourteenth Amendment; however, upon review of his third count, he is stating a claim of cruel and unusual punishment under the Eighth Amendment, not a due process claim under the Fourteenth Amendment. To the extent Plaintiff is attempting to raise a distinct Fourteenth Amendment due process claim, he has failed to adequately raise and support such a claim.

[5] Plaintiff alleges a Fourteenth Amendment violation; however, since Plaintiff is a convicted felon confined in prison, his claim actually constitutes an alleged Eighth Amendment violation. To the extent Plaintiff is attempting to raise distinct due process or equal protection claims, he has failed to adequately raise these claims or support them with operative facts.

3

Defendant Allen called Plaintiff a liar and referenced the letter. Id. Defendant Allen placed Plaintiff in handcuffs and shackles. Id. Defendant Allen nodded his head, pointed to his office, and told Defendant Hancock, "you know what to do." Id.

Defendant Hancock escorted Plaintiff from D-area to B-area. Id. Defendant Hancock took Plaintiff into a room next to Defendant Allen's office. Id. at 13. At this point, Defendant Hancock punched Plaintiff in the side of the head, breaking Plaintiff's glasses. Id. Plaintiff fell against a table, and then to the floor. Id. Defendant Hancock told Plaintiff to get up. Id. Defendant Hancock began to kick and stomp on Plaintiff, cursing Plaintiff and telling him to get up. Id. Being handcuffed, Plaintiff could not get up. Id. Defendant Hancock struck Plaintiff on the head, ribs, and legs. Id. Defendant Hancock picked Plaintiff up from the floor, threw him against a wall, and kneed him in the stomach. Id. Officer Aaron E. Cobb entered the room but failed to intervene. Id. Officer Cobb stated he wanted a piece of Plaintiff. Id. Defendant Hancock grabbed Plaintiff and tossed him towards Officer Cobb. Id. Officer Cobb punched, kicked and kneed Plaintiff. Id. Defendant Hancock failed to intervene. Id. Officer Cobb tossed Plaintiff against a wall and rammed Plaintiff with his body. Id. at 14. Officer Cobb tossed Plaintiff back to Defendant Hancock, and Hancock repeatedly hit Plaintiff. Id. Defendant Hancock tossed Plaintiff back to Officer Cobb. Id.

4

Defendant Hancock departed.  <u>Id</u>.  Officer Cobb said, "nothing happen[ed] here right, or do you want some more."  <u>Id</u>.  Defendant John Doe arrived to escort Plaintiff to the hospital for a pre-confinement examination.  <u>Id</u>.  Officer Cobb departed.  <u>Id</u>.

Plaintiff struggled to make the short walk to the UCI hospital, taking over thirty minutes, frequently stopping in pain. <u>Id</u>.  Defendant Nurse Griffin was on duty at the hospital.  <u>Id</u>.  She recognized Plaintiff due to his job assignment as an impaired inmate assistant.  <u>Id</u>.  She inquired as to the location of his glasses.  <u>Id</u>. at 15.  Plaintiff responded that they were "in that bag, that they got broken when the officer hit him several times in the head."  <u>Id</u>.  Defendant Nurse Griffin took the glasses and walked away.  <u>Id</u>.  When Plaintiff responded to her questions, he was experiencing excruciating pain and was having trouble talking. <u>Id</u>.  As she walked away mumbling under her breath, Plaintiff tried to tell Defendant Nurse Griffin that he was beaten by two officers. <u>Id</u>.  Plaintiff had visible bruises.  <u>Id</u>.  Defendant Nurse Griffin never returned to give Plaintiff his pre-confinement examination. <u>Id</u>.  She failed to report the beating.  <u>Id</u>.

Defendant John Doe told Plaintiff it was time to go.  <u>Id</u>. at 16.  Plaintiff inquired about his pre-confinement examination, but Defendant John Doe told Plaintiff he was finished.  <u>Id</u>.  Plaintiff did not receive an examination, and he did not see a doctor.  <u>Id</u>.

When Plaintiff arrived at confinement, he was placed in a cell

with no mattress.  Id.  Over three days passed before Plaintiff
received a mattress.  Id.  Plaintiff was in excruciating pain, his
head was pounding, and he slipped in and out of consciousness.  Id.
Plaintiff could not eat for three days.  Id.  His head was
pounding, his jaw was sore, and his ribs were hurting.  Id.  On
February 23, 2009, Plaintiff attempted to ask an officer about
seeing a nurse, but Plaintiff was told to get off the door.  Id.
Plaintiff tried to get the attention of Defendant Jane Doe, but she
ignored him.  Id.  When told to complete a sick call slip,
Plaintiff asked for a slip and no one provided one.  Id.  Plaintiff
obtained a sick call slip from another inmate, and Plaintiff placed
it in his door for pick-up.  Id.  Defendant John Doe, on February
24, 2009, called inmates for sick call, but Plaintiff was not taken
to sick call.  Id.  Defendant John Doe told Plaintiff he was not on
the sick call list.  Id. at 17.

Plaintiff asked for another sick call slip, but he never
received one.  Id. at 17.  The nurses and officers ignored
Plaintiff.  Id.  He was not provided with a shower that night.  Id.
Plaintiff obtained a sick call slip from another inmate and placed
it in his door for pick-up.  Id.  On February 25, 2009, Plaintiff
was not called for sick call, and Defendant John Doe told Plaintiff
to get off of the door.  Id.  Plaintiff declared a medical
emergency, an officer told Plaintiff he looked fine, and the
officer departed.  Id.  Plaintiff made a request for sick call on

March 6, 2009.  Id. at 18.  He was not called for sick call on March 7, 2009.  Id.  Plaintiff filed an informal grievance on March 13, 2009.  Id.  Health services received the grievance on March 18, 2009, assigned the matter to C. B. Allin, and Ms. Allin waited over three weeks to answer the request for medical attention.  Id.

On March 24, 2009, Plaintiff wrote a request to mental health seeking help.  Id. at 19.  Ms. A. Hartley, a psychologist, responded that she would see him in a few days.  Id.  Plaintiff signed up for sick call on March 28, 2009, but he was not seen on March 29, 2009.  Id.  Plaintiff renewed his medication, Ibuprofen, through sick call on April 1, 2009.  Id.  Plaintiff sent a second request to Dr. Hartley on April 2, 2009.  Id.  On April 12, 2009, Plaintiff signed up for sick call.  Id.  Dr. Hartley saw Plaintiff on April 7, 2009.  Id. at 20.  She documented Plaintiff's claim of excessive force.  Id.  She reported the incident.  Id.  Nurse Bickel was on duty, and she found no visual evidence to substantiate Plaintiff's complaint.  Id.  Plaintiff told the nurse about his head injury, his ribs hurting and his hurt knee.  Id.  Nurse Bickel told Plaintiff she would put in a request for Plaintiff to see a doctor.  Id.  On April 15, 2009, Nurse Bickel came to Plaintiff's cell, asked some questions, and reported that Plaintiff refused vitals.  Id.  On April 21, 2009, Plaintiff filed a grievance to the warden about the lack of medical care.  Id.

7

On May 1, 2009, Plaintiff was released from confinement and placed in population. Id. at 21. On May 3, 2009, Plaintiff requested sick call. Id. On May 5, 2009, Plaintiff went to sick call and explained his medical problems. Id. The nurse referred Plaintiff to a doctor. Id. On May 5, 2009, Plaintiff's medical passes were taken by Sergeant Lee. Id. The Warden, on May 11, 2009, responded to Plaintiff's grievance. Id. On May 12, 2009, Plaintiff explained his injuries to Defendant Dr. Espinosa. Id. at 22. Plaintiff complained that he had been beaten, and his ribs hurt when he breathed, his arm and knee hurt, and he was still suffering from severe headaches. Id. Defendant Dr. Espinosa ordered x-rays. Id. On May 7, 2009, x-rays were taken of Plaintiff's shoulder and chest, but not of his knee. Id.

On May 18, 2009, Plaintiff wrote an informal grievance about Sgt. Lee taking the medical passes. Id. On May 25, 2009, Plaintiff wrote a grievance to the Secretary of the FDOC about the lack of medical treatment. Id. Nurse Allin denied Plaintiff's informal grievance on May 28, 2009. Id. Plaintiff received two restrictions through medical passes on May 27, 2009, not six restrictions as requested. Id. On May 29, 2009, Lieutenant Turner spoke with Plaintiff about the beating incident. Id.

On June 4, 2009, Plaintiff told Dr. Nazareno that he needed x-rays of his ribs, not his chest. Id. Dr. Nazareno ordered a second set of x-rays. Id. The Secretary, on June 8, 2009,

responded to Plaintiff's grievance. <u>Id</u>. at 22-23.  On June 8, 2009, the results of the second set of x-rays showed that Plaintiff had two fractured ribs. <u>Id</u>. at 23.  On June 12, 2009, Plaintiff filed a grievance about Sergeant Lee taking the medical passes. <u>Id</u>.

Plaintiff spoke with Inspector Snow on June 18, 2009. <u>Id</u>.  On July 8, 2009, the Warden answered Plaintiff's grievance about the medical passes. <u>Id</u>.  On July 16, 2009, Defendant Dr. Espinosa discussed with the Plaintiff the results of the x-rays showing two fractured ribs. <u>Id</u>.  They discussed possible treatment of the fractured ribs. <u>Id</u>.  When Plaintiff told Defendant Dr. Espinosa that he had been beaten by two correctional officers and the matter was under investigation, Defendant Dr. Espinosa told Plaintiff that there was nothing he could do for Plaintiff. <u>Id</u>.  Defendant Dr. Espinosa refused to treat Plaintiff's other complaints, including Plaintiff's complaints about medical passes and his hurt knee, and Dr. Espinosa told Plaintiff to leave. <u>Id</u>.

On July 20, 2009, Plaintiff requested sick call, and on July 22, 2009 he went to sick call, but it was cancelled. <u>Id</u>. at 24.  On July 20, 2009, Plaintiff filed a grievance to the Secretary about his medical passes. <u>Id</u>.  On July 23, 2009, Plaintiff signed up for sick call, and on July 24, 2009, he went to sick call, but again it was cancelled. <u>Id</u>.  On July 23, 2009, Plaintiff filed a grievance of reprisal against Defendant Dr. Espinosa and the medical staff for refusing to treat Plaintiff's injuries. <u>Id</u>.

9

On July 28, 2009, Plaintiff made a sick call request, and Plaintiff was referred to a doctor. Id. The Warden denied Plaintiff's grievance of reprisal on August 13, 2009. Id. Plaintiff filed a grievance with the Secretary on August 17, 2009, and the grievance concerned Dr. Espinosa. Id. The grievance board stamped it received on August 24, 2009. Id. On November 4, 2009, the Secretary denied the grievance. Id.

On September 28, 2009 and December 14, 2009, Plaintiff requested sick call for his knee injury. Id. at 25. It took over a year to obtain relief for the knee injury. Id. In 2010, Plaintiff continued to file medical requests and grievances concerning his medical passes. Id. On March 26, 2010, most of the medical passes were renewed. Id.

On November 3, 2010, Plaintiff was referred to Dr. Rodriguez. Id. at 26. Plaintiff told Dr. Rodriguez about the beating and his knee injury. Id. Dr. Rodriguez examined Plaintiff's knee, bent it, the knee cracked, and Dr. Rodriguez ordered x-rays and a MRI of Plaintiff's right knee. Id. Dr. Rodriguez, in February 2011, told Plaintiff that the MRI came back positive for torn ligaments. Id. Plaintiff received an operation for the torn ligaments on February 25, 2011. Id. Defendant Griffin checked Plaintiff's knee on two occasions. Id. She threatened the Plaintiff with being locked up in confinement if he continued to pursue his issues. Id. In June

10

of 2011, Plaintiff was transferred to Charlotte Correctional Institution. Id. at 27.

Plaintiff seeks declaratory relief. Second Amended Complaint at 7-8. He also seeks compensatory and punitive damages. Id. at 27-28.

### III.   Exhaustion of Administrative Remedies

Defendants move to dismiss the action pursuant to 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is required before an action with respect to prison conditions by a prisoner may be initiated in this Court. The Eleventh Circuit has stated:

> Before considering the merits of this case, we must address a threshold matter. According to 42 U.S.C. § 1997e(a), enacted as part of the Prison Litigation Reform Act (the "PLRA"),
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
>
> The PLRA's effective date was April 26, 1996; because the prisoners filed their complaint after this date, the PLRA applies. Higginbottom v. Carter, 223 F.3d 1259, 1260 (11th Cir. 2000). A district court must dismiss the suit when it finds that the plaintiff-inmate has not exhausted his administrative remedies. Cf. Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000). . . . .

Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004).

Defendants contend that Plaintiff has not exhausted his administrative remedies. Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the Prison Litigation Reform Act. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.), cert. denied, 555 U.S. 1074 (2008); Jones v. Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). The Supreme Court has stated that "failure to exhaust is an affirmative defense under the PLRA[.]" Jones v. Bock, 549 U.S. at 216. However, "the PLRA exhaustion requirement is not jurisdictional[.]" Woodford v. Ngo, 548 U.S. at 101. See Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (recognizing that the defense "is not a jurisdictional matter").

Discussing an unenumerated motion to dismiss under 12(b), Fed.R.Civ.P., based on failure to exhaust administrative remedies, the Eleventh Circuit advises:

> That motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b) is not unusual or problematic. "'Federal courts . . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules.'" Ritza, 837 F.2d at 369 (quoting 5C Wright & Miller, supra, § 1360 at 77). For instance, courts may decide motions to dismiss that are "'closely related to the management of the lawsuit and might generally be characterized as involving matters of judicial administration.'" Id.; see e.g., Int'l Ass'n of Entrepreneurs of Am. v. Angoff, 58 F.3d

> 1266, 1271 (8th Cir. 1995) ("While pre-answer
> motions are ostensibly enumerated in
> Fed.R.Civ.P. 12(b), district courts have the
> discretion to recognize additional pre-answer
> motions, including motions to stay cases
> within federal jurisdiction when a parallel
> state action is pending.").

Bryant v. Rich, 530 F.3d at 1375 (emphasis added).  The Eleventh

Circuit concludes that "exhaustion should be decided on a Rule

12(b) motion to dismiss[.]"  Id. (citation omitted).

    If a prisoner fails to completely exhaust his administrative

remedies prior to initiating a suit in federal court, the complaint

must be dismissed.  "This is true even if the inmate thereafter

exhausts his administrative remedies after initiating his action in

federal court."  Whitley v. Aldridge, No. 3:11-cv-491-J-25JBT, 2013

WL 4520883, at *2 (M.D. Fla. Jan. 15, 2013) (citations omitted).

    Moreover, "the PLRA exhaustion requirement requires proper

exhaustion."  Woodford, 548 U.S at 93.

> Because exhaustion requirements are designed
> to deal with parties who do not want to
> exhaust, administrative law creates an
> incentive for these parties to do what they
> would otherwise prefer not to do, namely, to
> give the agency a fair and full opportunity to
> adjudicate their claims.  Administrative law
> does this by requiring proper exhaustion of
> administrative remedies, which "means using
> all steps that the agency holds out, and doing
> so properly (so that the agency addresses the
> issues on the merits)."  Pozo,[6] 286 F.3d, at
> 1024. . . .

---

[6] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir.), cert. denied,
537 U.S. 949 (2002).

Id. at 90.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  Id.

Upon review of the documents submitted to the Court, the Court is convinced that Plaintiff has adequately exhausted an Eighth Amendment claim against Defendant Griffin for refusing to treat his serious medical needs and delaying medical treatment.  Plaintiff claims Defendant Griffin never gave him a pre-confinement physical and she failed to report the beating.  Plaintiff adequately grieved the denial of a pre-confinement physical and the refusal to treat his injuries or to report a beating.  Plaintiff's Exhibits A, D & F;[7] Ex. C;[8] and Ex. D.

Plaintiff also claims Defendant Griffin threatened to lock him up if he continued to pursue his complaints.  The Court finds that Plaintiff failed to exhaust his administrative remedies with respect to this claim against Defendant Griffin.  This claim against Defendant Griffin will be dismissed.

Defendant Espinosa claims that Plaintiff failed to properly exhaust his administrative remedies with regard to an knee injury. The record shows the following with respect to Plaintiff's complaints about his knee.  On September 28, 2009, Plaintiff wrote an inmate sick-call request complaining about aching knees and that

---

[7] The Court hereinafter refers to the Exhibits attached to the Second Amended Complaint as "Plaintiff's Exhibit."

[8] The Court hereinafter refers to the Exhibits attached to the Response (Doc. 30) as "Ex."

14

his right knee cracks when he walks, and sometimes buckles. Plaintiff's Exhibit B at 9. Plaintiff submitted a grievance to the warden, dated April 21, 2009, complaining that his foot was swollen and he could not walk. Plaintiff's Exhibit D at 3. He was seen for right knee pain by Dr. Carlos Esquivia, complaining of a two-year history of an injury of the right knee. Plaintiff's Exhibit E at 7-9. Plaintiff filed a grievance stating that standing for short periods of time causes him pain. Plaintiff's Exhibit F at 2. This grievance specifically names Dr. Espinosa and complains about his refusal to address Plaintiff's medical complaints. Id. at 2-4. The appeal response dated August 12, 2009, relates that Plaintiff "ambulated to the clinic without difficulty[.]" Id. at 6. Plaintiff's grievance appeal to the Secretary mentions Plaintiff's pain and the fact that he could not stand for a very long period of time. Id. at 7-9. Plaintiff states that Dr. Espinosa refused to treat him any further for his medical issues from the assault. Id. at 8. Plaintiff submitted a grievance to the Secretary dated July 20, 2009, complaining that his knees are in a "severe state." Id. at 18-19.

Upon consideration of these grievances, the Court finds that Plaintiff adequately exhausted his administrative remedies with respect to his claim that Dr. Espinosa was deliberately indifferent to his serious medical needs, including Plaintiff's claim that Dr. Espinosa failed to address Plaintiff's complaints about his alleged

15

knee injury.  Dr. Espinosa's request that Plaintiff's Second
Amended Complaint be dismissed for failure to exhaust
administrative remedies is due to be denied.

Therefore, the only claim that will be dismissed for
Plaintiff's failure to exhaust administrative remedies is
Plaintiff's claim that Defendant Griffin threatened to lock him up
if he continued to pursue his complaints.  Because Plaintiff did
not exhaust his administrative remedies prior to initiating this
suit, this claim against Defendant Griffin will be dismissed
without prejudice.  In all other respects, the Motions to Dismiss
for failure to exhaust administrative remedies are due to be
denied.

## IV.  Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556
U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550
U.S. 544, 570 (2007)).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged."  <u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 556).
"[T]he tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal
conclusions.  Threadbare recitals of the elements of a cause of

16

action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

Defendant Griffin asserts that Plaintiff has failed to adequately allege an Eighth Amendment violation. Griffin's Motion to Dismiss at 16-22. Upon review of the Second Amended Complaint, Plaintiff has adequately presented an Eighth Amendment claim with respect to his claim of deliberate indifference to his serious medical needs in Count Three of the Second Amended Complaint. Second Amended Complaint at 14-15. Indeed, Plaintiff claims deliberate indifference to his rights to be free from cruel and unusual punishment. Id. at 10.

Defendant Espinosa claims that Plaintiff has failed to adequately allege an Eighth Amendment violation against him.[9] Defendants' Motion to Dismiss at 11-17. The Court concludes that the Second Amended Complaint states a deliberate indifference claim against Defendant Espinosa that is plausible on its face. Second Amended Complaint at 22-25.

The matters raised in the Defendant Griffin's and Defendant Espinosa's Motions to Dismiss would more properly be raised in a Rule 56 motion with supporting medical records, affidavits, and

---

[9] Defendant Espinosa also asserts that Plaintiff has failed to adequately allege a First Amendment retaliation claim against him. Defendants' Motion to Dismiss at 17-18. Upon review of the Second Amended Complaint, Plaintiff does not raise a First Amendment claim in his four causes of action. Second Amended Complaint at 6, 9-11.

other relevant documents.  Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.  When the Defendants file their motions for summary judgment, they are directed to state with particularity the supporting evidentiary basis for granting summary disposition of this case.  The Court need not scour the record for evidentiary materials on file; instead, the Court need ensure that the allegedly dispositive motion itself is supported by the appropriate evidentiary materials.  <u>Reese v. Herbert</u>, 527 F.3d 1253, 1269 (11th Cir. 2008) (citing <u>One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.</u>, 363 F.3d 1099, 1101-02 (11th Cir. 2004)).

## V.  Conspiracy

Plaintiff claims that Defendants Hancock, Allen, John Doe, Nurse Griffin, and Jane Doe entered into a conspiracy to cover up the fact that Plaintiff was beaten by correctional officers and to conceal his injuries.[10]  Second Amended Complaint at 11.  Plaintiff complains that the failure to document the alleged assault and his need for medical treatment constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

Upon review,

---

[10] The Court notes that Plaintiff did not include Defendant Espinosa in his conspiracy claim.  Second Amended Complaint at 11. To the extent that Plaintiff intended to include Defendant Espinosa in the conspiracy claim, the conspiracy claim is due to be dismissed for the reasons stated in the opinion.

18

> A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right. GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990) (citations omitted). A plaintiff claiming a § 1983 conspiracy must prove the defendants "reached an understanding" to violate the plaintiff's constitutional rights. Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement."). Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence. Burrell v. Bd. of Trs. of Ga. Military Coll., 970 F.2d 785, 789 (11th Cir. 1992).

Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010).

Defendants assert that Plaintiff's conspiracy claim must fail because of the intracorporate conspiracy doctrine, and this Court agrees. Defendant Griffin's Motion to Dismiss at 24-25; Defendants' Motion to Dismiss at 18. All of these Defendants were employees of the FDOC at the time of the events in question, and since all of the allegations arise out of their duties as employees of the FDOC, Plaintiff's claim of conspiracy is due to be dismissed. An explanation follows.

Initially, in order to establish a § 1853(3) conspiracy claim, Plaintiff has to show two or more persons entered an agreement to deprive him of his civil rights.   42 U.S.C. § 1853(3).   Here, Plaintiff claims that these FDOC's employees conspired to deprive him of his constitutional rights.   Indeed, the employees of the FDOC "constitute a single legal entity that cannot conspire with itself."   Dickerson v. Alachua Cnty. Comm'n., 200 F.3d 761, 768 (11th Cir.), cert. dismissed, 530 U.S. 1285 (2000).

The intracorporate conspiracy doctrine "has been applied not only to private corporations but also to public, government entities."   Hollins v. Fulton Cnty., 422 F. App'x 828, 833 (11th Cir.) (per curiam) (quoting Dickerson, 200 F.3d at 767), cert. denied, 132 S.Ct. 586 (2011).   Of note, the doctrine provides "that employees of a public, governmental entity or a private corporation, when acting as agents of the entity or corporation, 'are deemed incapable of conspiring among themselves or with the corporation.'"   McLemore v. Cruz, No. 6:10-cv-766-Orl-28KRS, 2011 WL 4101729, at *4 (M.D. Fla. Sept. 14, 2011) (quoting Dickerson, 200 F.3d at 767) (a case claiming co-conspirators, correctional officers at the Orange County Jail, created a "fight-club" at the jail staging inmate fights).

Recently, the United States District Court for the Northern District of Florida found that when all of the alleged conspirators were employees of the FDOC and no outsiders were involved in the

alleged conspiracy, the intracorporate conspiracy doctrine comes into play. <u>Myers v. Fla.</u>, No. 5:12-cv-259-RS-EMT, 2014 WL 68067, at *10 (N.D. Fla. Jan. 8, 2014).  In the instant case, some of the Defendants are correctional officers, and they were conducting a cell search and then proceeded to restrain Plaintiff and escort him to medical and confinement.  The remaining Defendants are medical staff who were performing their duties of providing medical care for the inmate population.  In this instance, Defendants were undoubtedly performing job-related duties.

As noted in <u>Grider</u>, 618 F.3d at 1261,

> We recognize that one might reasonably believe that violating someone's constitutional rights is never a job-related function or within the scope of a [correctional] officer's employment. However, the question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally.  The scope-of-employment inquiry is whether the employee [correctional] officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business.

Here, the job-related functions of the correctional employees were "well within Defendants' scope of employment as FDOC employees." <u>Claudio v. Crews</u>, No. 5:13-cv-345-MP-EMT, 2014 WL 1758106, at *6 (N.D. Fla. May 1, 2014).

Upon review, the intracorporate conspiracy doctrine bars Defendants from being held liable for conspiring to deprive

Plaintiff of his right to be free from physical assault and his right to constitutionally adequate medical care.  Since all of the Defendants were FDOC's employees at the time of the incident, "[t]he 'conspiracy' occurred only within a government entity[.]" Rehberg v. Paulk, 611 F.3d 828, 854 (11th Cir. 2010), aff'd by 132 S.Ct. 1497 (2012).  The intracorporate conspiracy doctrine bars the conspiracy claim against the Defendants, and the Motions to Dismiss are due to be granted as to Plaintiff's conspiracy claim.[11]

## VI.  Remaining Matters

Defendants adopt and incorporate Defendant Griffin's sections IV (Eleventh Amendment Immunity), V (Qualified Immunity), VI (42 U.S.C. § 1997e(e)), and VII (Appointment of Counsel).  Defendants' Motion to Dismiss at 18; Griffin's Motion to Dismiss at 25-31. Plaintiff is not suing the Defendants in their official capacities. Response at 15; Response to Defendants at 7.  Therefore, Defendants' claim of Eleventh Amendment immunity is inapplicable to

---

[11] Finding the intracorporate conspiracy doctrine applicable under these circumstances is not a comment on whether there should or should not be criminal liability: "[t]he fiction was never intended to prohibit the imposition of criminal liability by allowing a corporation or its agents to hide behind the identity of the other." United States v. Hartley, 678 F.2d 961, 970 (11th Cir. 1982) (abrogated on other grounds), cert. denied, 459 U.S. 1170 (1983).  Indeed, it has been recognized that it is possible for a corporation to conspire with its own officers.  Id. at 972. However, the exception to the intracorporate conspiracy doctrine for a conviction involving criminal charges of conspiracy is not at issue.    Plaintiff has not alleged that the conduct of the Defendants, as described in his Second Amended Complaint, "could give rise to criminal charges of conspiracy" against the FDOC employees. Dickerson, 200 F.3d at 770.

this action because all Defendants have been named in their individual capacities.

All of the Defendants contend that they are entitled to qualified immunity. Defendants' Motion to Dismiss at 18; Griffin's Motion to Dismiss at 25-28. Because there are material issues of fact with respect to the Eighth Amendment claims, the Court cannot address whether Defendants are entitled to qualified immunity until these disputed facts have been resolved, which would require compiling, analyzing and addressing evidence, after reciprocal discovery.

Defendants contend that Plaintiff has not suffered an injury sufficient to withstand 42 U.S.C. § 1997e(e). Defendants' Motion to Dismiss at 18; Griffin's Motion to Dismiss at 28-29. In Napier v. Preslicka, 314 F.3d 528, 531-32 (11th Cir. 2002), cert. denied, 540 U.S. 1112 (2004), the Eleventh Circuit addressed the requirements of 1997e(e):

> Subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." This statute is intended to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints. See Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir. 2000) (en banc) (surveying the legislative history of the PLRA). An action barred by § 1997e(e) is barred only during the imprisonment of the plaintiff; therefore, such action should be dismissed without prejudice by the district

court, allowing the prisoner to bring his claim once released and, presumably, once the litigation cost-benefit balance is restored to normal. Id. at 980.

Tracking the language of the statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody. In Harris, we decided that the phrase "Federal civil action" means all federal claims, including constitutional claims. 216 F.3d at 984-85.

The record shows that Plaintiff suffered some injuries.[12] Eventually it was determined that Plaintiff had two fractured ribs. He also suffered a tear of the right medial meniscus. Plaintiff complained of pain and other injuries. He was treated for his injuries, given x-rays and a MRI, provided with pain medication, and ultimately received surgery on his right knee. Under these circumstances, the Court is not inclined to find that the injuries are de minimis.

In the alternative, Plaintiff is bringing a federal civil action, he is a prisoner, and he is seeking compensatory and punitive damages. However, Plaintiff also requests that he be granted "other relief that this Honorable Court deems proper." Second Amended Complaint at 28. Liberally construed, such a prayer for relief could include a request for nominal damages. See Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 492 (11th Cir. 2009)

---

[12] Plaintiff asserts that Defendant Griffin failed to examine him and document his injuries. Also, the cause of the injuries is in dispute.

(per curiam) (finding that "[t]he district court erred when it found that [the plaintiff] was not seeking nominal damages because it failed to construe his pro se pleadings liberally").

The extent and cause of Plaintiff's injuries are in dispute. However, even assuming arguendo that Plaintiff's injuries are de minimis, construing Plaintiff's Complaint liberally, Plaintiff could still be entitled to nominal damages if he prevailed at trial. Thus, 42 U.S.C. § 1997e(e) does not provide a basis for dismissing this case at this time.

Finally, Defendants contend that Plaintiff is not entitled to appointment of counsel as he has shown that he is capable of adequately investigating and presenting his case and there are no exceptional circumstances to warrant the appointment of counsel. Defendants' Motion to Dismiss at 18; Griffin's Motion to Dismiss at 29-31. Because it appears Plaintiff is able to prosecute this case during this early stage of the litigation, Plaintiff's request for the appointment of counsel is premature. However, after the case progresses, Plaintiff may file a motion for appointment of counsel for the Court's consideration.

## VII.  John Doe and Jane Doe

In the Second Amended Complaint, Plaintiff names a John Doe Defendant, described as a correctional officer/nurse, and a Jane Doe Defendant, described as a nurse. "[F]ictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598

F.3d 734, 738 (11th Cir. 2010) (per curiam) (citing New v. Sports & Recreation, Inc., 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)). Plaintiff's description of these unnamed defendants in his Second Amended Complaint is not sufficiently specific to be able to identify the defendants among the many guards and nurses employed by the FDOC.    In addition, these two FDOC's employees are not adequately described in the Second Amended Complaint so that the individuals can be identified for service of process.  See Dean v. Barber, 951 F.2d 1210, 1216 n.6 (11th Cir. 1992).  Therefore, the Court will sua sponte dismiss Defendants John Doe and Jane Doe.

Therefore, it is now

**ORDERED:**

1.    Defendant Cathy Griffin's Motion to Dismiss (Doc. 28) is **GRANTED** based on Plaintiff's failure to exhaust administrative remedies prior to the filing of this action with respect to Plaintiff's claim that Defendant Griffin threatened to lock him up if he continued to pursue his complaints.  Defendant Griffin's Motion to Dismiss (Doc. 28) is also **GRANTED** as to Plaintiff's conspiracy claim.    In all other respects, Defendant Griffin's Motion to Dismiss (Doc. 28) is **DENIED**.

2.    Defendants' Motion to Dismiss (Doc. 38) is **GRANTED** with respect to the conspiracy claim.    In all other respects, Defendants' Motion to Dismiss (Doc. 38) is **DENIED**.

26

3.    **Defendant John Doe** and **Defendant Jane Doe** are hereby **DISMISSED** from this action.   The **Clerk** shall terminate **Defendants John Doe and Jane Doe** on the docket.

4.    The remaining Defendants shall respond to the Second Amended Complaint by **November 19, 2014.**

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of October, 2014.


_____
BRIAN J. DAVIS
United States District Judge



sa 10/16
c:
Counsel of Record